## NEWPORT COUNTY.

13 639
22 535

JOHN E. WATSON *vs.* WILLIAM W. KNOWLES.

By a deed of partition A. received the right to have to himself and his heirs "exclusively all the sea manure and drift stuff which lands on the west shore," also to have "the right of tipping the same and carting away at their pleasure, by a road or way leading on the bank of said west shore, clear of the gullies."

*Held,* that this right did not embrace goods floated ashore from a wrecked vessel so as to entitle A. to the salvage as against the riparian owner.

*Held,* further, that the right was confined to such stuff as A. could collect and legally appropriate, not such as A. must hold for or deliver to a known owner.

EXCEPTIONS to the Court of Common Pleas.

This action was trespass on the case, brought in the Court of Common Pleas, and jury trial of the questions of fact involved was waived by the parties litigant. The defendant pleaded specially, and the plaintiff demurred to the pleas.

The plaintiff's demurrers were overruled by the presiding justice of the Court of Common Pleas, and the pleas being substantiated, judgment was entered for the defendant for his costs.

To the rulings of the presiding justice sustaining the pleas and refusing to sustain the demurrers, the plaintiff excepted.

The facts of the case are stated in the opinion of the court.

*Providence, April* 20, 1882. DURFEE, C. J. This is trespass on the case for interfering with the alleged right of the plaintiff to take, collect, and carry away all the "drift stuff" landing on a certain part of the west shore of "Middle Farm," in Jamestown, duly described in the declaration. The allegation is that the defendant, disregarding said right, collected and carried away from the shore certain drift stuff, to wit: fifty bales of cotton, divers boxes, barrels, and much lumber, and converted and disposed of the same to his, the defendant's, own use. To this declaration the defendant has pleaded several special pleas, to which the plaintiff has demurred. One of the pleas shows that the right to take drift stuff, alleged in the declaration, was conferred by a deed of partition executed December 23, 1822. By this deed a tract of

land of about eight hundred acres was partitioned among the four
children of Caleb Gardiner, its former owner. Middle Farm, which
was part of the tract, was allotted to William C. Gardiner, one of
said children, subject to the rights and privileges conferred on
Audley Clarke and Mary his wife, their heirs and assigns, in the
right of Mary, another of said children, said rights and privileges
being made an appendage to North Farm, so called, another part
of said tract which was allotted to said Audley and Mary, in the
right of Mary. Among the rights so conferred on Audley and
Mary was the right to " have to themselves, their heirs and assigns
for ever, exclusively, all the sea manure and drift stuff which lands
on the west shore to the northward of the place called the water
fence in Franklin's Hollow. They are also to have," the deed
goes on to say, " the right of tipping the same and carting away
at their pleasure, by a road or way leading on the bank of said
west shore, clear of the gullies, until it comes to the line of said
North Farm." This is the right which the plaintiff sets up as now
belonging to him, and for interfering with which he sues the de-
fendant. The plea further shows that the defendant, at the time
of the alleged interference, was seized and possessed of Middle
Farm, and, being seized and possessed thereof, found on the shore
thereof certain wrecked goods, and wreck cast or carried there by
the sea from a certain wrecked steam vessel named the Rhode Isl-
and, her furniture and freight, and having so found, delivered them
to the owner, and that said goods and wreck are the property al-
leged to be drift stuff in the declaration.

It is evident from the pleadings that the action will not lie un-
less the word " drift stuff," as used in the partition deed, is com-
prehensive enough in its meaning to include goods washed ashore
from a wrecked vessel under such circumstances that they can be
identified as such and delivered to their owner. The plaintiff con-
tends that it is, and, consequently, that he was alone entitled to
save the goods and wreck and have the salvage. The goods and
wreck, the plaintiff argues, were " stuff " which was adrift on the
sea, and driven or drifted ashore by the winds and the waves, and
therefore " drift stuff." But in our opinion such an interpretation
of the word is too purely etymological to be satisfactory. The
word must be interpreted in the light of the relations or context

in which it is used. In its common acceptation it signifies not goods which are the subject of salvage, but matters floating at random, without any known or discoverable ownership, which, if cast ashore, will probably never be reclaimed, but will, as a matter of course, accrue to the riparian proprietor. And, viewing the word in its context, that is its apparent meaning. It is used to create a right or easement appurtenant to the North Farm, and, therefore, presumably for the service of the North Farm. It follows in the text of the deed the word "sea manure," as if it were a secondary matter, but cognate in signification. It is something which the grantees are to have the right of tipping up and carting away at their pleasure, a right which is appropriate to the random drift and refuse of the ocean, but not to goods which wash ashore directly from a wrecked vessel. Moreover the right conferred is a right to have "exclusively all the sea manure and drift stuff which lands on the west shore." It is the things themselves which are granted or conceded, not a mere right of salvage in them. It seems to us, therefore, that it would be going beyond the fair meaning of the word to hold that it extends to the goods mentioned in the pleadings, and gives the defendant the exclusive right of saving them from the waves for the salvage.

The plaintiff refers to the law of wreck, and cites a case under it to show that a grantee of a franchise of wreck is entitled to have the goods cast ashore within the limits of his franchise, until they are reclaimed, though the owner be known. We do not see that the case can affect the decision of the question here. The plaintiff is not the grantee of such a franchise, for such a franchise is grantable only by the State. He claims under the partition deed, which does not purport to confer a franchise, but only grants a right to take sea manure and drift stuff: such stuff as, when taken, the grantee would have a right to tip up and cart off at his pleasure, and not goods of known ownership cast ashore from a wrecked vessel, which it would be his duty, if he took them, to deliver immediately to the owner, if present, and to protect for him, if absent. *Exceptions overruled.*

*William P. Sheffield & William P. Sheffield, Jun.*, for plaintiff.
*Francis B. Peckham, Jun.*, for defendant.